1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

ANTHONY C. BENNETT,

NO.  C12-836-JCC-JPD

9

Plaintiff,

10

v.

REPORT AND
RECOMMENDATION

11

MICHAEL J. ASTRUE, Commissioner of
Social Security,

12
13

Defendant.

14      Plaintiff Anthony C. Bennett appeals the final decision of the Commissioner of the

15  Social Security Administration ("Commissioner") which denied his application for

16  Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17  §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18  forth below, the Court recommends that the Commissioner's decision be REVERSED and

19  REMANDED for further administrative proceedings.

20                    I.        FACTS AND PROCEDURAL HISTORY

21      At the time of the administrative hearing, plaintiff was a fifty-year old man with a tenth

22  grade education.  Administrative Record ("AR") at 58.  His past work experience includes

23  employment as a construction worker and kitchen helper.  AR at 41.

24

REPORT AND RECOMMENDATION - 1

Plaintiff initially filed a claim for SSI payments in November 2007, alleging an onset date of September 1, 1999. AR at 147. His application was denied initially in March 2008, with no further appeal being taken. AR at 82, 85-88.[1]

Plaintiff reapplied in January 2009, once again alleging an onset date of September 1, 1999. AR at 153. Plaintiff asserts that he is disabled due to back pain, emphysema, and a history of substance abuse. AR at 19, 22. The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 89, 97, 102. Plaintiff requested a hearing which took place on July 30, 2010. AR at 52-81. On August 13, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 16-45. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 18, 2012, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

---

[1] As discussed in greater detail below, the Commissioner alleges that "the March 2008 initial decision became the final decision of the Commissioner that established a presumption of continuing non-disability for the period beginning on his alleged onset date of September 1, 1999, through January 16, 2009, the date of Plaintiff's current application." Dkt. 17 at 2. Plaintiff responds that the presumption of continuing non-disability identified by the Commissioner applies only once an ALJ (or Appeals Council) renders a prior "final decision," and does not apply to an initial denial. Dkt. 18 at 3.

REPORT AND RECOMMENDATION - 2

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Bennett bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

V.    DECISION BELOW

On August 13, 2010, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since
January 16, 2009, the application date.

2.    The claimant has the following severe impairments: cervical
degenerative disc disease status-post fusion with soft tissue
involvement, degenerative disc disease of the lumbar spine, affective
disorder, anxiety disorder, history of substance abuse disorder in
reported remission.

3.    The claimant does not have an impairment or combination of
impairments that meets or medically equals one of the listed
impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, I find that the claimant
has the residual functional capacity to perform light work as defined in
20 CFR 416.967(b), in that he is able to lift and carry 20 pounds
occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour

workday, and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above amounts. The claimant is able occasionally to climb, balance, stoop, and crouch, and he is able frequently to kneel and crawl.  He should avoid concentrated exposure  to fumes, odors, dusts, gases,  poor ventilation, etc.2  The claimant is able to understand, follow, and carry out 1- to 3-step instructions consistently and is able to make simple work-related decisions necessary to perform unskilled work.  He should have limited public contact.  He is able to adapt to changes in the workplace within the tolerance of most employers in a competitive environment.  He should work in a predictable work setting.  [The additional postural or environmental limitations indicated do not significantly erode the universe of light work (Social Security Rulings 83-10; 83-14; 85-15). *Roquemore v. Comm'r of SSA*, 2010 U.S. App. LEXIS 4971 (9th Cir.) (occasional climb, balance, stoop, kneel, crouch, and crawl, climb poles, ropes an scaffolds have very little or no effect on the unskilled occupational base for light or sedentary work). *Cf*., *also*, *Baeir v. Astrue*, 319 Fed. Appx. 521(9th Cir. 2010). His mental limitations will be addressed at length, *infra.*]

5.   The claimant is unable to perform any past relevant work.

6.   The claimant was born on XXXXX, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  The claimant subsequently changed age category to closely approaching advanced age. [3]

7.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, since January 16, 2009, the date the application was filed.

AR at 18-45 (footnote bracketed in text).

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

# VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ properly evaluate the opinions set forth in Exhibits 7F and 11F?

2.     Did the ALJ err by relying on the grids and failing to obtain vocational-expert testimony at step five?

3.     Did the ALJ err in evaluating the opinion of examining psychologist Dr. Widlan and non-examining psychologist Dr. Peterson?

Dkt. 16 at 1; Dkt. 17 at 2.

# VII.     DISCUSSION

A.     <u>Any Error by the ALJ in Evaluating the Opinion Evidence from the Single Decisionmaker and State Agency Physicians was Harmless</u>

      *1.     The ALJ's Error in Citing to the SDM's RFC Assessment in Ex. 7F was Harmless*

Emeye Bekele, who acted as a non-physician "single decisionmaker" ("SDM") in plaintiff's case at the initial level of administrative adjudication, prepared a physical residual functional capacity assessment on February 12, 2009 that was designated as Exhibit 7F.  AR at 377-84.  In Exhibit 11F, non-examining state agency physician Dr. Ulleland affirmed Emeye Bekele's determinations.  AR at 504.[4]

The ALJ alleged that his RFC assessment was consistent with the opinions of the state agency medical consultants, and then he cited to Exhibit 7F.  AR at 36.  Specifically, the ALJ asserted that "in some cases, a consulting physician may better bring impartiality and expertise to disability issues, given that the regular physician . . . may lack appreciation of how one case compares with other related cases."  AR at 36.  The ALJ further asserted that "my assessment of this matter is consistent with the opinions of the state agency medical consultants, who reviewed the record in connection with the initial determinations.  *See* Ex. 7F, 9F."  AR at 36.

---

[4] The ALJ did not specifically refer to exhibit 11F in his written decision.

1    As a threshold matter, plaintiff contends that the ALJ was wrong when he stated that

2    his RFC assessment, AR at 20, was consistent with Exhibit 7F, because "exhibit 7F included a

3    restriction on concentrated exposure to hazards defined as 'machinery, heights, etc.' . . . [but]

4    no such restriction was included in the ALJ's [RFC] assessment." Dkt. 16 at 5-6. In addition,

5    plaintiff points out that the ALJ erroneously suggested that a "medical consultant" prepared

6    Exhibit 7F, when this was not the case. *See id*. at 5. Plaintiff argues that "Exhibit 7F was

7    owed no weight in and of itself. In an SDM case in the State of Washington, a non-examining

8    state-agency physician does not determine the claimant's physical [RFC] at the initial level.

9    Rather, as in the case at bar, a non-physician adjudicator, e.g., Ms. Bekele, is allowed to make

10   that determination." *Id*. at 7 (citing Program Operations Manual System ("POMS") § DI

11   12015.002). Plaintiff asserts that "an ALJ may not give any weight to a non-physician

12   adjudicator's determinations as substantial evidence . . . When an ALJ relies on a prior

13   adjudicator's determination of the same claim to decide that a claimant is not disabled, the ALJ

14   deprives the claimant or his or her statutory right to a de novo ALJ decision." *Id*. at 7-8 (citing

15   42 U.S.C. § 405(b)). *See also* POMS § DI 24510.050(C) ("SDM-completed forms are not

16   opinion evidence at the appeal levels.").

17   The Commissioner responds that contrary to plaintiff's contention that "the ALJ

18   improperly relied on Exhibit 7F . . . this scrivener's error in identifying the appropriate exhibit

19   number in no way prejudiced or harmed Plaintiff. The ALJ clearly states in his decision that

20   he was relying upon the State agency medical consultants." Dkt. 17 at 3 (citing AR at 36).

21   Specifically, the Commissioner asserts that "it is reasonable to assume that when the ALJ

22   stated his assessment was consistent with the state agency medical consultants he was referring

23   to Christy Ulleland, M.D.'s affirmation of the SDM's assessment." *Id*. The Commissioner

24   points out that "the ALJ does not mention the single decision maker (SDM) by name at all in

REPORT AND RECOMMENDATION - 8

his decision; he simply refers to the medical consultant, who with regard to Plaintiff's physical limitations in this instance was Dr. Ulleland." *Id.* at 4 (citing AR at 16-45). The Commissioner contends that plaintiff has not demonstrated that "the scrivener's error in not identifying the appropriate exhibit number" created any prejudice requiring remand. *Id.*

Plaintiff responds that "the ALJ's factual error herein was not . . . a clerical error," as alleged by the Commissioner. Dkt. 18 at 10. Specifically, plaintiff asserts that "[r]eferring to a non-physician adjudicator as a licensed physician and relying expressly on her determinations as substantial evidence is not a 'minor mistake or inadvertence,' but rather a major factual and legal error." *Id*. at 11.

As alleged by plaintiff, the ALJ cited to Ms. Bekele's RFC assessment, which is set forth in Exhibit 7F, as support for his RFC assessment. AR at 36. The ALJ's discussion also fails to distinguish Ms. Bekele as a non-physician adjudicator in a SDM case, rather than one of the non-examining state agency physicians. AR at 36. The ALJ did not expressly cite to Dr. Ulleland's opinion, but he did assert generally that his RFC assessment was "consistent with the opinions of the state agency medical consultants, who reviewed the record in connection with the initial determinations[.]" AR at 36.

As mentioned above, plaintiff has also quoted from an open letter from Social Security Administration's Chief ALJ to Regional Chief ALJs explaining that state SDMs are not medical professionals, and agency policy precludes ALJs from giving any evidentiary weight to Residual Functional Capacity ("RFC") assessments prepared by SDMs. *See* Dkt. 16 at 8 ("Agency policy is that findings made by SDMs are not opinion evidence that [ALJs] or Attorney Adjudicators (AAs) should consider and address in their decisions. See, for example, POMS § DI 24510.050C, which states that SDM-completed forms are not opinion evidence at the appeal levels."). This letter was issued on September 14, 2010, approximately one month

1    after the ALJ issued his written decision in this case.  *See also* POMS § DI 12015.002

2    (providing that the SDM model "allows a SDM to make the initial determination of disability

3    without requiring the medical or psychological consultant (MC) to sign the disability

4    determination forms that we use to have the State agency certify the determination of

5    disability[.]").  This Chief ALJ's open letter is consistent with case law holding that "[a]n SDM

6    is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight

7    as a medical opinion, nor to consideration as evidence from other non-medical sources."

8    *Greenfield v. Astrue*, 2010 WL 2132057, *4 n.5 (D. Kan. 2010); *Ky v. Astrue*, 2009 WL 68760

9    (D. Colo. 2009); *Bolton v. Astrue,* 2008 WL 2038513 (M.D. Fla. 2008).

10          Although plaintiff is correct that the ALJ improperly cited to the non-medical opinion

11   of Ms. Bekele, the fact remains that Ms. Bekele's review was affirmed in its entirety by non-

12   examining agency physician Christy Ulleland, M.D.  AR at 504.  Specifically, Dr. Ulleland

13   indicated that she "reviewed all of the evidence in [the] file and the physical assessment of

14   2/12/2009 is affirmed."  AR at 504.  The ALJ was obligated to consider Dr. Ulleland's opinion

15   as part of his evaluation of the medical opinion evidence.  *See* 20 C.F.R. §§ 404.1527(f)(2)(i),

16   416.927(f)(2)(i).  Thus, the ALJ's error in citing to Ms. Bekele's RFC assessment, without

17   more, is insufficient to require remand in this case, as long as the ALJ properly evaluated the

18   opinion of Dr. Ulleland.  *See* Lawrence v. Astrue, 2010 WL 2990760, *1 (W.D. Wash. 2010)

19   (holding that although "the ALJ improperly relied on the non-medical opinion of SDM David

20   Vincent, Mr. Vincent's review was affirmed by Dr. Robert Hoskins in its entirety" and "the

21   ALJ properly considered the medical opinion of Dr. Hoskins in reaching a conclusion as to

22   plaintiff's RFC.").  *See also* Kempel v. Astrue, 2010 WL 58910 (D. Kan. 2010) ("Because Dr.

23   Siemsen affirmed [the SDM's] assessment, the 'opinions to which the ALJ refers in the

24   decision, include the medical opinion of an 'acceptable medical source,' and the ALJ's 'error

REPORT AND RECOMMENDATION - 10

in referring as well to the report of the non-physician does not require remand.'"); *Lamp v. Astrue*, 2009 WL 412884 (N.D.W. Va. 2009) (affirming ALJ's reliance on RFC assessment prepared by SDM where physician subsequently noted on the report "I have reviewed all the evidence in file and assessment 11/03/04 is affirmed as written."); *Jones v. Astrue,* 2008 WL 1766964 (S.D. Ind. 2008) (affirming ALJ's reliance on SDM decision where decision was "reaffirmed entirely by a physician's opinion which the ALJ could weigh appropriately as a consulting medical opinion.").

> ### 2. *The ALJ Did Not Err in Evaluating Dr. Ulleland's Opinion in Ex. 11F*

Plaintiff contends that the ALJ erred by failing to evaluate Dr. Ulleland's determinations as opinion evidence, and "did not give legally sufficient reasons for implicitly rejecting Dr. Ulleland's opinion about concentrated exposure to hazards such as machinery." Dkt. 16 at 9.  Plaintiff asserts that even if the ALJ properly "evaluated Dr. Ulleland's determinations as opinion evidence, Dr. Ulleland's opinions would not constitute substantial evidence for the physical elements of the ALJ's [RFC] assessment or the ALJ's finding that objective medical evidence did not support Bennett's statements about his physical limitations. In April 2009, Dr. Ulleland was unaware of Bennett's November 2009 cervical fusion," and therefore "could not have properly assessed Bennett's ability to reach, handle, finger, and rotate his neck." *Id.*

The Commissioner responds that the ALJ's failure to include a limitation with regard to concentrated exposure to hazards such as machinery in the RFC assessment, which was assessed by the SDM and affirmed by Dr. Ulleland, was harmless.  Dkt. 17 at 6.  The Commissioner does not elaborate further, however, apart from citing to SSR 85-15.  *Id.* at 7 (citing SSR 85-15, at *8 ("A person may have the physical and mental capacity to perform certain functions in certain places, but to do so may aggravate his or her impairment(s) or

1   subject the individual or others to the risk of bodily injury.  Surroundings which an individual

2   may need to avoid because of impairment include those involving . . . recognized hazards such

3   as unprotected elevations and dangerous moving machinery; and fumes, dust, and poor

4   ventilation.")).

5          Although Dr. Ulleland adopted the SDM's recommendation that plaintiff must avoid

6   concentrated exposure to "hazards (machinery, heights, etc.)" in the check-the-box portion of

7   the physical RFC assessment form, the SDM and Dr. Ulleland did not specifically address this

8   limitation in the narrative portion of their forms.  AR at 381, 504.  The SDM did comment in

9   the narrative portion of her form that "due to his mild emphysema, [claimant] should avoid

10  concentrated exposure to fumes."  AR at 384.  In his RFC assessment, the ALJ limited plaintiff

11  to light work, and noted that "he should avoid concentrated exposure to fumes, odors, dusts,

12  gases, poor ventilation, etc."  AR at 20.  The ALJ did not include the limitation that plaintiff

13  must avoid concentrated exposure to hazards such as machinery or heights, but noted that "the

14  additional postural or environmental limitations indicated do not significantly erode the

15  universe of light work."  AR at 20.

16         The Court cannot agree with the plaintiff that the ALJ's omission of Dr. Ulleland's

17  limitation regarding hazards in the check-box portion of the physical RFC form from his RFC

18  assessment was harmful error.  As a threshold matter, the ALJ is not required to include,

19  verbatim, each limitations marked in a credited opinion.  Furthermore, this Court's review

20  shows that the ALJ's final RFC findings accurately reflect Dr. Ulleland's narrative functional

21  capacity assessment, which elaborates on the "summary conclusions" of the check-box form.

22  For example, the SDM's narrative comments adopted by Dr. Ulleland, such as the restriction

23  against fumes or gases due to plaintiff's emphysema, are adequately reflected in the ALJ's

24  RFC assessment.  An ALJ properly focuses on the narrative portion of RFC forms, rather than

REPORT AND RECOMMENDATION - 12

check-boxes on the accompanying form. *See e.g.*, *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).  Finally, plaintiff's conclusory assertion that Dr. Ulleland's RFC assessment must be inaccurate because it was completed before plaintiff's November 2009 cervical fusion is unpersuasive.  Thus, the ALJ did not err with respect to Dr. Ulleland's opinion.

For reasons discussed below, however, this case is being remanded for further administrative proceedings.  On remand, if the ALJ did intend to credit Dr. Ulleland's limitation regarding hazards such as heights or machinery, the ALJ should expressly include such a restriction in the RFC assessment.

B.     <u>The ALJ Improperly Relied on the Medical-Vocational Guidelines and Failed to Obtain VE Testimony at Step Five</u>

As mentioned above, at step five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that plaintiff could perform in light of his age, education, work experience, and residual functional capacity.  *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett v. Apfel,* 180 F.3d 1094, 1098–1099, 1101 (9th Cir. 1999); *Burkhart v. Bowen,* 856 F.2d 1335, 1340 (9th Cir. 1988)).  In *Tackett,* the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." *Id.*  The ALJ in this case did not use a vocational expert and, instead, relied solely on the Medical–Vocational Guidelines ("the grids") to perform his step-five evaluation.

The grids present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant.  The grids categorize jobs by their physical-exertional requirements and consist of three separate tables (one for each category): "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work."  20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00.  Each grid presents various combinations of factors relevant to a claimant's ability to find work.  The factors in the grids are the claimant's age, education, and work experience.  For each combination of these factors, the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.  *Tackett*, 180 F.3d at 1101 (emphasis in original).

The ALJ's reliance on the grids at step five is justified if they "*completely and accurately* represent a claimant's limitations . . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work."  *Tackett*, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).  If the grids do not match all of the claimant's qualifications, the Commissioner may use them as a framework to make a determination of what work exists.  *See Hoopai v. Astrue,* 499 F.3d 1071, 1075 (9th Cir. 2007).  Specifically, the grids can be used if there are both exertional and non-exertional limitations present, as "a vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid."  *Id.* at 1076 (finding that mild or moderate depression does not establish a "sufficiently severe non-exertional limitation" to preclude reliance on the grids at step five).

In other words, the question of whether the ALJ may rely on the grids in a case where a claimant suffers from both exertional and non-exertional impairments depends upon whether

1    the claimant's non-exertional impairments are "significant and sufficiently severe" such that

2    they affect a claimant's ability to perform the full range of jobs at the appropriate strength

3    level.  If the occupational base is significantly limited by a non-exertional impairment, the ALJ

4    may not rely on the grids to carry the burden of proving that there are other jobs a claimant can

5    do.  Instead, the testimony of a vocational expert is required.

6          Plaintiff contends that even assuming the ALJ's RFC assessment was accurate, his

7    "combined non-exertional limitations required the ALJ to obtain vocational-expert testimony."

8    Dkt. 16 at 10.  Specifically, plaintiff asserts that "the ALJ cited no evidence or authority that a

9    restriction to one- to three-step instructions was not a significant non-exertional limitation or

10   that such a restriction was co-extensive with unskilled work.  Indeed, a restriction to one- to –

11   three-step instructions narrows the unskilled occupational base to Reasoning Level 1

12   Dictionary of Occupational Titles (DOT) occupations."  *Id*. at 11.  Reasoning level one

13   occupations require a plaintiff to "apply commonsense understanding to carry out simple one-

14   or two-step instructions," and therefore plaintiff asserts that "only Reasoning Level 1 is clearly

15   consistent with the ALJ's finding that Bennett could understand, follow, and carry out one- to

16   three-step instructions."  *Id*. at 12.   Similarly, plaintiff contends that "the ALJ cited no

17   evidence or authority that a restriction to a 'predictable work setting' was not a significant non-

18   exertional limitation or that such a restriction was co-extensive with unskilled work," or "that a

19   restriction to 'limited public contact' had an insignificant impact on the unskilled 'light'

20   occupational base."  *Id*. at 13.  Thus, plaintiff asserts that plaintiff's "combined non-exertional

21   limitations as found or implicitly accepted by the AJ himself warranted obtaining vocational-

22   expert testimony at step five."  *Id*. at 16.

23         The Commissioner's brief fails to directly address plaintiff's arguments.  Instead, the

24   Commissioner sets forth boilerplate statements regarding the Ninth Circuit caselaw and

REPORT AND RECOMMENDATION - 15

1    regulations governing the ALJ's use of the grids.  *See* Dkt. 17 at 11.  The Commissioner

2    further asserts, without any supporting analysis, that "the ALJ did not find, and Plaintiff has

3    not demonstrated, that the non-exertional (sic) found by the ALJ significantly limited the

4    number of unskilled jobs in the light to sedentary range of work permitted by his exertional

5    limitations . . . Thus, the ALJ properly relied on the guidelines in this case[.]"  *Id*. at 13.

6    Although plaintiff's arguments generally relate to non-exertional limitations that were actually

7    adopted as part of the ALJ's RFC assessment, the Commissioner incorrectly argues that

8    plaintiff "restat[es] his arguments that the ALJ improperly discounted certain evidence[.]"  *Id*.[5]

9    Thus, the Commissioner's brief regarding this issue is, to say the least, unhelpful to the Court.

10        Nevertheless, the Court cannot find that the ALJ met his burden at step five of the

11   sequential evaluation process.  Here, in addition to plaintiff's physical impairments, the ALJ

12   found plaintiff limited to "1- to 3-step instructions" and "simple work-related decisions

13   necessary to perform unskilled work."  AR at 20.  The ALJ also found that plaintiff should

14   have "limited public contact" in a "predictable work setting."  AR at 20.  Despite these

15   restrictions, the ALJ concluded that plaintiff's combined non-exertional limitations "do not

16   significantly erode the universe of light work" in ways not contemplated by the grids.  AR at

17   42.  The cases cited by the ALJ, however, do not support his conclusion.

18        For example, the ALJ relied heavily upon two decisions from the First and Seventh

19   Circuits.  AR at 42 (citing O*rtiz v. Sec. of Health and Human Services*, 890 F.2d 520, 527-28

21   [5] Plaintiff also argues that the ALJ erred by relying on SSR 85-15, and points to Ninth
22   Circuit cases noting that SSR 85-15 "provides guidance only for cases in which the claimant
23   asserts 'solely non-exertional impairments.'" *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir.
     1995) (quoting SSR 85-15); *accord Sandgathe v. Chater*, 108 F.3d 978, 980-81 (9th Cir.
     1996).  The Commissioner also fails to respond to this argument. *See* Dkt. 17 at 11-13.  Given
     the context in which the ALJ discusses SSR 85-15 in his written decision, which is discussed
24   below, the Court cannot agree with the plaintiff's argument that the ALJ erred in this regard.

1    (1st Cir. 1989) (holding that although "the question [was] a close one," the claimant's

2    moderate limitations in his ability to maintain attention and concentration, maintain regular

3    attendance and punctuality, and complete a normal workday without unreasonable

4    interruptions did not significantly erode the full range of light work); *Zalewski v. Heckler*, 760

5    F.2d 160, 165 (7th Cir. 1985) (holding that unskilled sedentary work available to those needing

6    minimal interaction with others was properly established by reference to the grids, because

7    "the regulations dealing with sedentary work provide that there are approximately two hundred

8    separate unskilled sedentary occupations in the national economy . . . [and] approximately

9    eighty-five percent of these jobs are in the machine trades and benchwork occupational

10   categories that would not require a high degree of interaction with others.").  However, the

11   First and Seventh Circuits' decisions in *Ortiz* and *Zalewski* do not involve the same

12   combination of non-exertional limitations as the plaintiff in this case.  For example, although

13   *Zalewski* also involved a limitation regarding public contact, it did not involve additional

14   restrictions to one- to three-step instructions and a predictable work setting.  Similarly,

15   although the ALJ in *Ortiz* found that claimant capable of performing light work, the mental

16   limitations at issue were entirely different than this case.  It goes without saying that these

17   decisions are also not the law of this circuit.

18        The ALJ also quoted the Ninth Circuit's decision in *Hoopai* as support for his

19   conclusion.  However, the Ninth Circuit's holding in *Hoopai* is inapplicable to this case, as it

20   did not involve the same non-exertional limitations as the plaintiff.  In *Hoopai*, the Ninth

21   Circuit held that the claimant's "mild or moderate depression" was not a sufficiently severe

22   non-exertional limitation to significantly limit his ability to do work beyond his exertional

23   limitations.  499 F.3d at 1077.  Specifically, the claimant was moderately limited in his ability

24   to maintain attention and concentration for extended periods, perform activities within a

REPORT AND RECOMMENDATION - 17

schedule, maintain regular attendance, be punctual with customary tolerance, complete a normal workday and workweek without interruption from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. *See id*. The Ninth Circuit found that although the claimant's depression was deemed to be "severe" at step two of the sequential evaluation process, his depression did not result in any significant limitations which would have to be included in his RFC finding or presented to the vocational expert. *Id.* By contrast, the ALJ in this case found plaintiff's nonexertional impairments, which included restrictions to limited public contact, one-to-three step instructions, and a predictable work setting, sufficiently severe to also include them in his RFC assessment.

The ALJ also cited to the Ninth Circuit's decision in *Razey v. Heckler*, which held that the Appeals Council "did not err in determining that the use of [the grids] was appropriate where limitations from claimant's 'generalized anxiety disorder' did not significant affect the range of sedentary work otherwise available." AR at 42 (citing *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986), *modified*, 794 F.2d 1348 (1986)). In *Razey*, however, the Ninth Circuit merely asserts that the Appeals Council did not err by finding the claimant's assertion that his anxiety disorder "reduced [his] pain threshold" for his hip pain "insufficient to show that [the claimant's] nonexertional limitations rendered him disabled. Reviewing the record as a whole, we cannot say that this determination was unsupported by substantial evidence." *Id*. Thus, *Razey* does not identify any specific limitations stemming from that claimant's anxiety disorder, or offer any guidance about the nonexertional limitations at issue in this case, which would support the ALJ's conclusion that plaintiff's anxiety disorder does not significantly affect the range of light work otherwise available.

1    With respect to SSR 85-15, the ALJ properly acknowledged that "SSR 85-15 by its

2    terms applies to solely non-exertional impairments," but some courts have also found it

3    relevant to individuals with exertional impairments as well as severe mental impairments.  AR

4    at 43.  Specifically, SSR 85-15 defines the mental capabilities required for unskilled work, and

5    provides that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with

6    data or people, and they generally provide substantial vocational opportunity for persons with

7    solely mental impairments who retain the capacity to meet the intellectual and emotional

8    demands of such jobs on a sustained basis . . . . The basic mental demands of competitive,

9    remunerative, unskilled work includes the abilities (on a sustained basis) to understand, carry

10   out, and remember simple instructions; to respond appropriately to supervision, coworkers, and

11   usual work situations, and to deal with changes in a routine work setting." AR at 43 (citing

12   SSR 85-15).

13   However, the ALJ's conclusion "that with the mental limitations denoted above,

14   consistent with *Hoopai* and *Ortiz*, the claimant retains the capacity to perform unskilled work

15   as explicated by Social Security Ruling 85-15" speculates about the base of unskilled work

16   without adequate support from caselaw or evidence from the record.  AR at 43.  The cases

17   cited by the ALJ from the Ninth Circuit do not address all of the non-exertional limitations at

18   issue in this case, and the Court is not persuaded by the caselaw cited by the ALJ from other

19   circuits.  It is not at all clear that despite his non-exertional impairments, plaintiff maintains an

20   ability to perform "the basic mental demands of competitive, remunerative, unskilled work"

21   described in SSR 85-15.  Here, the ALJ erred by venturing into the realm of vocational expert

22   testimony by concluding, without adequate support, that plaintiff's non-exertional limitations

23   did not significantly erode the occupational base of unskilled light work.  Without more, the

24   Court cannot find that substantial evidence supports the ALJ's conclusion that plaintiff retained

REPORT AND RECOMMENDATION - 19

1   the capacity to perform nearly the full range of unskilled light work in any work environment,

2   as described in SSR 85-15.

3        Accordingly, because the Court finds that the ALJ's reliance on the grids was improper,

4   this case must be remanded for a reevaluation of what jobs, if any, plaintiff can perform.  On

5   remand, the ALJ shall solicit the testimony of a VE, and discuss the <u>DOT</u> reasoning levels

6   requirements of any jobs identified.  If there is any conflict between the VE's testimony and

7   the <u>DOT</u>, the ALJ shall discuss this conflict and the ALJ's resolution of it in the written

8   decision.

9        C.    <u>On Remand, the ALJ Shall Also Reevaluate the Opinion of Dr. Widlan and</u>
              <u>Indicate Whether a Presumption of Continuing Non-Disability is Applicable</u>

10       Plaintiff alleges that the ALJ erred in evaluating the opinions of examining

11  psychologist Dr. Widlan and non-examining psychologist Dr. Peterson.  Specifically, plaintiff

12  asserts that the ALJ "failed to evaluate examining psychologist Dr. Widlan's February 2008

13  opinions," which constituted significant and probative evidence in light of Dr. Widlan's

14  opinion that plaintiff's "severe symptoms of depression" result in deficits in memory,

15  concentration, and social reasoning, such that plaintiff was incapable of following a three-step

16  command or engaging in full-time employment.  Dkt. 16 at 17 (citing AR at 579).  In addition,

17  plaintiff argues that the ALJ failed to evaluate non-examining agency psychologist Dr.

18  Peterson's opinion in Exhibit 9F that plaintiff "may take somewhat longer than average to

19  adapt to changes in the workplace due to his oppositional/antisocial personality disorder."  *Id*.

20  (citing AR at 402).

21       As a threshold matter, the Court rejects plaintiff's argument that the ALJ erred in

22  evaluating Dr. Peterson's opinion.  Although the ALJ did not include Dr. Peterson's comment

23  that plaintiff "may take somewhat longer than average to adapt to changes in the workplace,"

24

REPORT AND RECOMMENDATION - 20

1    the ALJ did properly include in his RFC assessment Dr. Peterson's *conclusion* that plaintiff is

2    capable of adapting to changes in the workplace "within the tolerance of most employers in a

3    competitive work environment.  Claimant should work in a predictable work setting to reduce

4    stress." AR at 402.   As discussed above, the ALJ expressly included both of these findings in

5    his RFC assessment.  AR at 20.  Thus, the Court agrees with the Commissioner that the ALJ

6    did not err by failing to adopt "this speculative portion of Dr. Peterson's opinion." Dkt. 17 at 8.

7            The Commissioner concedes that the ALJ did not evaluate Dr. Widlan's February 2008

8    opinions, but argues that his opinions were not relevant to the period under review because

9    "plaintiff's current application concerns the period from January 16, 2009 through the date of

10    the ALJ's decision [on] August 13, 2010." Dkt. 17 at 7.  The Commissioner argues that

11    because "Dr. Widlan's opinion was rendered in March 2008, and concerns a period where he

12    had already been found to be not disabled . . . his opinion is not probative, significant, nor

13    relevant to the period at issue." *Id.*  Thus, the parties' dispute regarding the probative nature of

14    Dr. Widlan's opinion is inextricably related to their disagreement regarding whether the

15    Commissioner's initial denial of plaintiff's November 2007 application for SSI, on March 13,

16    2008, has a *res judicata* effect on this case.  AR at 82, 85.

17            Specifically, the Commissioner alleges that the initial March 2008 denial of plaintiff's

18    application constitutes the Commissioner's "final decision," and therefore *res judicata* applies

19    in this matter.  Dkt. 17 at 2.  The Commissioner asserts that "the March 2008 initial decision

20    became the final decision of the Commissioner that established a presumption of continuing

21    non-disability for the period beginning on his alleged onset date of September 1, 1999, through

22    January 16, 2009, the date of Plaintiff's current application." *Id.* at 3.  In other words, if

23    plaintiff prevails in this case, plaintiff is only eligible "to receive SSI disability payments from

24    the date of his application" filed on January 16, 2009. *Id.*

REPORT AND RECOMMENDATION - 21

1    Plaintiff responds that the presumption of continuing non-disability identified by the

2    Commissioner applies only once an ALJ (or implicitly the Appeals Council) renders a prior

3    final determination, and does not apply to an initial denial.  Dkt. 18 at 3 (citing *Chavez v.*

4    *Bowen*, 844 F.2d 691, 693 (9th Cir. 1988)).  Specifically, plaintiff points to the Ninth Circuit

5    statement that "[t]he claimant, in order to overcome the presumption of continuing

6    nondisability arising from the first [ALJ]'s findings of nondisability, must prove 'changed

7    circumstances' indicating a greater disability."  *Chavez*, 844 F.2d at 693.  Plaintiff further

8    asserts that Social Security Acquiescence Ruling 97-4(9) provides that the *Chavez* presumption

9    applies only when an ALJ (or Appeals Council) renders a prior final and binding

10   determination.  Dkt. 18 at 3 (citing Social Security Acquiescence Ruling 97-4(9) ("This Ruling

11   . . . applies only to cases involving a subsequent disability claim . . . on which there has been a

12   final decision by an ALJ or the Appeals Council that the claimant is not disabled."))[6]

13        Because this case is already being remanded for further administrative proceedings, it is

14   unnecessary for the Court to resolve the parties' dispute at this time.  There is no indication

15   that the ALJ in this case relied on the presumption of continuing non-disability in reaching his

16   decision.  Accordingly, on remand, the ALJ is directed to evaluate Dr. Widlan's opinions.  If

17   the ALJ finds that a presumption of continuing non-disability applies in this case, the ALJ shall

18   so indicate, along with an evaluation of whether the plaintiff has rebutted this presumption by

19   presenting "new and material evidence."  *See* Social Security Acquiescence Ruling 97-4(9).

20

21        [6] Acquiescence Rulings are Social Security Administration policy statements issued in
     response to the Court of Appeals' holdings, and they "describe the administrative case and the
22   court decision, identify the issue(s) involved, and explain how we will apply the holding,
     including, as necessary, how the holding relates to other decisions within the applicable
23   circuit."  20 C.F.R. § 404.985(b). They are binding on the Social Security Administration, 20
     C.F.R. § 402.35(b)(2), and are accorded deference by reviewing courts.  *McNabb v. Barnhart*,
24   340 F.3d 943, 944–45 (9th Cir. 2003).

1

VIII.   CONCLUSION

2              For the foregoing reasons, the Court recommends that this case be REVERSED and

3    REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4    instructions.  A proposed order accompanies this Report and Recommendation.

5              DATED this 18th day of January, 2013.

6

7                                                         _____
                                                          JAMES P. DONOHUE
8                                                         United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 23